THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. J. B. WELLS.

Decided October 24, 1900.

**1. Trial Amendment.**

An order sustaining exceptions to plaintiff's petition having been made but not noted on the docket nor entered of record, a trial amendment was thereupon filed; on the trial, at the next term, on objection to this being read because plaintiff had not repleaded as required by the rules, the court reannounced and had then entered its order of the proceding term sustaining the exceptions, and permitted the trial amendment to be refiled. Held, no error, as the exceptions were sustained and the trial amendment filed at the term at which the case was tried.

**2. Carrier—Connecting Lines—Agent—Evidence.**

Where connecting lines of railway appeared to operate as one system in soliciting and carrying cattle over a through route, the statements and representations of an agent of the system made to induce shipments over it were admissible against the companies composing it.

**3. Briefs.**

An assignment of error will not be considered where the brief contains no proposition thereunder nor statement of facts supporting it.

**4. Market Value—Information Derived from Newspapers.**

A witness may testify as to market values at a given time and place though he was then in another State and derived his knowledge from newspapers.

**5. Connecting Lines—Implied Through Contract.**

One delivering cattle for transportation to market over a system of connecting lines in pursuance of representations made by the agent of such system, may recover upon an implied joint contract for through transportation, where defendant does not put in evidence the written contract.

**6. Connecting Lines—One Liable for All.**

Where various lines of railway form one system to accomplish a through shipment each is liable for the acts of the others and for the undertakings of an agent for the system.

APPEAL from the County Court of Caldwell. Tried below before Hon. GEO. W. KYSER.

*A. B. Storey,* for appellant.—Third assignment of error: The court erred as follows: The plaintiff was asked by his attorneys if he knew

what was the market value of such cattle as the ones shipped by him in East St. Louis on Thursday, Friday, and Saturday (being the days named next prior to the Monday on which said cattle were sold), to which he answered not of his own knowledge, but from newspapers he could tell. To the statement of the market value from information obtained from newspapers defendant objected, for the reason that it would be hearsay testimony, and was not the best evidence obtainable, which objection was by the court overruled, and the witness permitted to testify to the market value of the cattle in East St. Louis on the days named, as obtained by him from newspapers sent to him from Texas; to which action of the court the defendant at the time excepted.

*McNeal & Linden* and *Geo. Burgess,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This is an action by appellee J. B. Wells against the Missouri, Kansas & Texas Railway Company of Texas, appellant, brought in the County Court of Caldwell County, for loss occasioned in the shipment of 306 head of beef cattle, while en route to East St. Louis on defendant's road, and its connecting line, the Missouri, Kansas & Texas Railway.

Plaintiff alleges that defendant was a common carrier of live stock for hire, between La Grange, in Texas, and Denison and beyond Denison to some point in the direction of St. Louis beyond Texas, where it connected with the other lines engaged in like business going to East St. Louis, thus forming a through route from Gonzales, Texas, to East St. Louis; that there was a rival railway at Gonzales which, with its connections, formed a through competing line between Gonzales and East St. Louis. That in order to control shipments over its through route, appellant through its authorized representatives promised and held out to shippers of live stock at Gonzales, and to plaintiff, that cattle delivered to its connecting line at Gonzales, the Galveston, Harrisburg & San Antonio Railway, in train load shipments would take precedence over other trains as through shipments, and would be safely delivered at St. Louis within three days from the time of departure from Gonzales. That on the 3d of May, 1892, plaintiff, relying on such representations, made up a train load of 306 fat beef cattle, to be shipped over appellant's route from Gonzales to St. Louis, for immediate sale there on Friday, May 6, 1892; that he delivered the cattle at Gonzales to the Galveston, Harrisburg & San Antonio Railway, by which they were safely delivered in good order at La Grange to defendant, and by it accepted, to be conveyed by it to East St. Louis; that appellant hauled the cattle negligently, slowly, and roughly, by reason of which they were all bruised and injured; that one was lost and four killed, of the value of $125, and that the rest, 301 head, were not delivered in East St. Louis until Saturday, May 7th, too late to be sold that day, and that rather than hold them at St. Louis, appellee carried them on to Chicago, where they were sold on Monday; that by reason of the delay from Fri-

day until Monday, caused by the negligence of defendant, the cattle lost in flesh, weight, and condition, and sold for less per head; that the cattle were so damaged $2.90 per head, aggregating $872.90; that three days was the usual and customary time of transporting cattle from Gonzales to East St. Louis.

On the 20th day of August, 1895, appellee filed first supplemental petition, denying under oath that he signed the written contract set up by appellant, or authorized others to sign it, and also impeaching the consideration of the contract. On November 19, 1895, one of appellant's special exceptions having been sustained, appellee filed a trial amendment, and on the 5th day of December, 1898, when the case was tried, the court, over objection of defendant, permitted appellee to read the trial amendment without requiring him to replead. The trial amendment alleged that the cattle were to be sold in open market in St. Louis; that they would have sold for one-fourth of a cent per pound gross more than they did sell for and would have weighed forty pounds more each gross if they had been carefully hauled and transported with reasonable promptness, as it was promised they should be; that if they had been handled with care and been transported in three days, which was a reasonable time, they would have sold for $3\frac{1}{2}$ cents per pound gross, and would have weighed 900 to 950 pounds each.

On the 20th day of August, 1895, defendant filed its second amended answer, excepting to appellee's pleadings, and general denial, and denying specially that it ever agreed to ship any cattle to St. Louis for appellee or his assigns upon any given date or to any particular market, and alleging that no person was authorized by it to so agree or contract, of which fact appellee had notice, and that the cattle were shipped under a written contract, "but it is not necessary," says appellant's brief, "to set out the terms of the said contract, as it does not appear in the record and does not appear to have been offered in evidence." Appellant further alleged that said cattle were received by it at La Grange from a connecting line, wholly independent of and in no way connected with appellant's road excepting as a connecting common carrier, and not by reason of any arrangement or contract between the parties, and that it received said stock as freight from a connecting line, and delivered it at its destination to another common carrier as it was bound to do under said contract, the destination, as set out in said written contract, being Vinita, in the Indian Territory.

In its first supplemental answer, filed December 5, 1898, appellant alleged that, if it be true that said cattle were not transported under a written contract as alleged by appellee, then it would not be liable for the acts of any of its connecting lines; that it made no contract nor authorized anyone to make contracts for it for shipment of cattle beyond its terminal except in writing and on terms specified in its second amended answer, of which appellee had notice; that if appellee did not sign nor authorize the signing of the said written contract, then it, the company, was only bound to transport said cattle from La Grange to its terminal in a reasonable time and deliver them in good condition to

its connecting carrier, which it did; that it never had, and never held itself out as having, any agreement or arrangement with its connecting lines for entering into any contract for shipment of cattle to any Eastern market or any point beyond its own lines.

The trial resulted in a verdict and judgment for appellee for $892.55, with interest thereon at 6 per cent per annum from May 9, 1892, to December 7, 1898, amount of interest $350.17, from which this appeal is taken.

*Opinion.*—The action of the court on exceptions of defendant filed November 19, 1895, sustaining the fourth exception to plaintiff's second amended petition, was not noted on the docket at the time, but plaintiff filed a trial amendment supplying the defect. When the case was called for trial at a subsequent term, defendant objected to the reading of the trial amendment, as the rules required that if the case was not tried at the term at which the trial amendment was filed the party should replead by amendment. When objection was made to the reading of the trial amendment, the court declared that he adhered to the former ruling not entered on the docket, and virtually made the same ruling as on the 19th of November, 1895, and announced that he would allow plaintiff to refile said trial amendment, or write another, whereupon defendant, still excepting to the action of the court but to save time of rewriting the trial amendment, agreed that it might be refiled in lieu of a new one. Defendant excepted to the action of the court and assigns it as error.

The trial amendment was in legal effect filed at the term of the trial and the court ruled on the exceptions at that term. Hence, the rule invoked by appellant was not violated.

We believe the testimony warranted the conclusion that the Missouri, Kansas & Texas Railway system included, at the time of the shipment in question, the Missouri, Kansas & Texas Railway of Texas and the Missouri, Kansas & Texas Railway operating on from Texas to St. Louis, and that both roads operated in the shipment of cattle from Texas to St. Louis as one road or system, soliciting and carrying cattle as on one through route; and we also believe that the evidence warrants the conclusion that Sam Hunt was the agent of the system authorized to solicit shipments of cattle over the system from points in Texas to St. Louis. He was the general live stock agent and acted for the system. Hence there was no error in allowing plaintiff to testify as to statements and representations made by Hunt to induce shipments over the system, including the defendant's railway in Texas.

Appellant's third assignment of error need not be considered, as the brief contains no proposition thereunder, and no reference to any bill of exceptions reserved to admission of the testimony referred to. There is abundant authority, however, supporting the ruling admitting the testimony as to market value of the cattle. Railway v. Pasture Co., 5 Texas Civ. App., 186; Railway v. Fisher & McFaddin, 18 Id., 78.

The fourth, fifth, and eleventh assignments of error are treated to-

gether in appellant's brief. The fourth assignment is that the court erred in sustaining plaintiff's objection to question asked by defendant of plaintiff on cross-examination, "if when he delivered the cattle to the Southern Pacific Railway Company at Gonzales he entered into a written contract with it for the shipment of the cattle to East St. Louis," defendant offering to show by the witness and he would have testified that he did enter into a written contract with the Southern Pacific Railway Company for transportation of these cattle to East St. Louis, which testimony was excluded by the court. The fifth assignment is addressed to the same ruling. The eleventh assignment is in effect that the court erred in refusing to give defendant's requested charge, that if the plaintiff shipped his twelve car loads of cattle from Gonzales over several connecting roads to St. Louis by virtue of a written contract by and between defendant and said J. B. Wells, then you are instructed that plaintiff could not recover against defendant upon some alleged verbal representations authorized by defendant to be made to plaintiff while he was acting as its agent as a solicitor, if you find he was so acting. You are further charged that if there was no express special contract of shipment between plaintiff and defendant through some agent authorized to act for it in the premises, for the shipment of this particular lot of cattle, then you are instructed that defendant, under the law, was bound to receive said cattle from its connecting lines and transport them without unnecessary delay to the end of its own line at Vinita, in the Indian Territory, and it could only be held liable for such damages as was caused by such unreasonable delay or rough and unskillful handling of its cars on its own line. You are further instructed that even if the defendant under a contract had been bound to deliver said cattle in East St. Louis within a reasonable time, it would only be liable for damages caused to said cattle by unreasonable and unnecessary delay at St. Louis, and the measure of damages in this case is the difference in the market value of said cattle at the time they did reach East St. Louis and the time they ought to have reached there; in other words, if you find from the evidence that said cattle ought to have reached East St. Louis on Friday morning in time for that day's market, but they in fact only reached there Saturday morning at 8 or 9 o'clock, then you are instructed that the measure of damages would be the difference, if any, in the value of the cattle on the Friday and Saturday market in East St. Louis, the point to which said cattle had been shipped.

The suit was based upon an implied contract, and for damages for its breach, to transport cattle to St. Louis, inducements being held out to shippers to transport cattle on its system of roads from the shipping point to East St. Louis; the alleged written contract with it was not offered in evidence, and it can not be relied on to defeat the action. Defendant in its pleadings relied on a written contract made with it and not with the Southern Pacific Railway Company. It was in evidence that defendant held out inducements to shippers by representations to ship by its line and system, and plaintiff, acting upon these representations, shipped the cattle on that system; in such case, no written con-

tract being in evidence, it can not claim that it was only bound by the terms of the written contract. The right to recover rested upon an implied contract.

The fact legitimately inferred from the evidence that the defendant sued was operated in connection with the Missouri, Kansas & Texas Railway and was a part of the system, rendered it liable for the acts of the system and every part of it, and the declarations and representations of agents of the Missouri, Kansas & Texas Railway Company would be the acts and declarations of defendant.

There was no error in the instruction of the court telling the jury that a common carrier could make a contract, either express or implied, to deliver cattle beyond its own line.

There was no error in refusing a new trial asked upon the ground that the verdict was contrary to the evidence. The testimony warrants the verdict and the amount ascertained by it, and finding no error as assigned, the judgment of the lower court is affirmed.

*Affirmed.*